UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JOAN SCHLENKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14 CV 141 ACL |
| | ) | |
| BIG LOTS STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Joan Schlenker has filed this personal injury action against Defendant Big Lots Stores, Inc. ("Big Lots"), alleging that she sustained injuries when she tripped and fell at a Big Lots store in Cape Girardeau, Missouri. This cause was originally filed in the Circuit Court of Cape Girardeau County, Missouri, and was removed to this Court pursuant to the Court's diversity jurisdiction. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. *See* 28 U.S.C. § 636(c). Presently pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 20). Plaintiff opposes the Motion, and the issues are fully briefed.

## **Background[1]**

On December 18, 2013, while walking into the entryway of Defendant's retail store, Big Lots, Plaintiff Joan Schlenker fell. Plaintiff claims that she caught her foot under a floor mat or rug that was wrinkled and not lying flush with the floor.

---

[1] The undisputed facts are taken from facts that (1) Plaintiff admitted were undisputed in her response or (2) Plaintiff alleged were disputed but failed to properly and/or directly controvert. The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1).

Plaintiff testified that she saw a "big ridge" in the rug after she fell, but she did not see the ridge prior to her fall. There were no lighting problems in Defendant's store, and Plaintiff was able to see the floor sufficiently. Plaintiff does not know which foot caught the alleged ridge on the rug.

Linda Morrill, Plaintiff's sister-in-law, was walking approximately one foot behind Plaintiff, witnessed Plaintiff's fall, and did not notice any ridges in the rug until after Plaintiff fell.

Bethany Bowman, a store associate working at Big Lots at the time of the incident, testified that she did not look at the rug prior to Plaintiff's fall, but "everybody knows in the store that if there is a wrinkle in a rug that you, you know, flatten it out." (Doc. 26-3 at 11.)

Eryn Jones was corralling carts and pushing them inside Defendant's store just prior to Plaintiff's fall. Ms. Jones testified that she did not remember seeing a ridge, wrinkle, or bunching in the rug.

No other witness saw any ridges, wrinkles, or bunching on the rug prior to Plaintiff's fall.

Donna Helton, an assistant manager at Big Lots at the time of the incident, testified that it was common for the rug to become "out of shape" after carts were brought in through the entryway. (Doc. 26-4 at 30.) Ms. Helton testified that employees would straighten the rug "almost every time" after carts were brought in. *Id.* Ms. Helton indicated that straightening the rug after carts were brought in was "something we always tried to keep an eye on." *Id.* at 29.

In her Complaint, Plaintiff claims that the premises of Defendant's store were dangerous and not reasonably safe for customers because the rug located in the entryway was wrinkled and not lying flush with the floor, which caused Plaintiff to catch her foot and fall forward. Plaintiff claims that Defendant knew or, by using ordinary care could have known, of the dangerous

2

condition then existing on its premises. Plaintiff alleges that she suffered a compression fracture in her back, which required immediate surgical intervention to her thoracic spine, as a result of the fall.

I. **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th Cir. 2004). "Instead, the dispute must be outcome determinative under prevailing law." *Mosley v. City of Northwoods,* 415 F.3d 908, 910-11 (8th Cir. 2005) (internal quotations omitted). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372,

380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

**II.    Discussion**

Defendant argues that Plaintiff has presented no evidence to support a necessary element of her claim—that Defendant's premises were in a dangerous condition prior to and at the time of Plaintiff's fall. Defendant contends that Plaintiff admits that the only time she saw the ridge in the rug was after she fell, and that she did not know how long the ridge had been there.

Plaintiff acknowledges that neither she nor her sister-in-law noticed the ridge in the rug prior to the fall. Plaintiff, however, contends that she has presented circumstantial evidence sufficient to raise a jury question as to the unreasonably safe condition of Defendant's store on the day Plaintiff fell and was injured.

To prevail on a premises liability claim, an injured invitee must show that (1) a dangerous condition existed on defendant's premises, (2) defendant knew or by using ordinary caution should have known of the condition, (3) defendant failed to use ordinary care in removing or

4

warning of the danger, and (4) invitee was injured as a result of the dangerous condition. *Rycraw v. White Castle Systems, Inc.*, 28 S.W.3d 495, 499 (Mo. Ct. App. 2000); *Roberson v. AFC Enterprises, Inc.*, 602 F.3d 931, 934 (8th Cir. 2010). "In many cases, a plaintiff will not know exactly what happened or what caused the fall and there may be no eyewitnesses. In those cases, a plaintiff may rely on circumstantial evidence." *Rycraw*, 28 S.W.3d at 499.

Defendant relies primarily on *Willoughby v. Safeway Stores, Inc.*, 397 S.W.2d 748 (Mo. Ct. App. 1965). As Defendant points out, the facts of *Willoughby* are very similar to those in the instant case, in that the plaintiff alleged that she tripped and fell over a wrinkle in a rubber mat on the floor of the defendant's grocery store. 397 S.W.2d at 749. The case was tried to the court without a jury on plaintiff's theory that defendant was negligent in maintaining a floor mat on its store premises in a dangerous condition. *Id.* The defendant filed a motion for judgment at the conclusion of the plaintiff's evidence, which the court denied. *Id.* The court found in favor of plaintiff and awarded damages. *Id.* The appellate court reversed the decision of the trial court, finding that the plaintiff had not sustained her burden to establish that defendant's store premises were in an unsafe condition by showing that the wrinkle was in the rubber mat before she fell. *Id.* at 751-52.

Defendant cites *Steward v. Baywood Villages*, 134 S.W.3d 679 (Mo. Ct. App. 2004), in which the plaintiffs appealed from the judgment entered on a directed verdict in favor of the defendant condominium association and defendant snow removal contractor in a slip and fall case. 134 S.W.3d at 681. The plaintiff alleged that she slipped on ice on the front porch of the condominium, but testified that she did not see any ice before she slipped. *Id.* at 683. On cross-examination, the plaintiff admitted that she was able to see the brick surface of the front porch clearly, and that she never saw any ice or snow on the front porch. *Id.* The only evidence the

5

plaintiff presented was reports from secondary sources—medical providers—relaying plaintiff's remarks that she had slipped on ice. *Id.* at 683-84. The court found that Plaintiff could not rely on her contradictory statements from secondary sources to make a submissible case. *Id.* The court affirmed the decision of the trial court directing judgment in favor of the defendant condominium owner. *Id.*

Plaintiff argues that Defendant's reliance on *Willoughby* is misplaced because, unlike the plaintiff in *Willoughby*, she has adduced additional evidence from which it may reasonably be inferred that the ridge in the entry rug was there prior to her fall. Plaintiff cites *Weiser v. Kansas City*, 481 S.W.2d 568 (Mo. Ct. App. 1972), which also involved an allegation that a ridge in a floor mat caused a fall although the plaintiff did not see the ridge prior to the fall. The *Weiser* court rejected the defendant's reliance on *Willoughby*, finding that the facts of were "altogether different," due to the evidence presented showing "a long-continued situation where humps and bubbles in the rubber matting had occurred daily, despite regular efforts by the employees in the office to straighten out the mats." *Id. Weiser* also noted that *Willoughby* involved a court-tried case, which did not require the evidence to be viewed in the light most favorable to the plaintiff as required in reviewing a jury verdict. *Id.*

Plaintiff argues that the testimony of Big Lots employees supports an inference that the ridge in the floor mat was there prior to her fall. Specifically, Plaintiff states that Bethany Bowman indicated that "ridges in the rug were not uncommon." (Doc. 26 at 3.) Plaintiff next states that, according to Donna Helton, "the fact that the floor mat would become wrinkled and bunched up when carts were brought in from the parking lot was a known problem." *Id.* Plaintiff further argues that the undisputed evidence reveals that, immediately prior to Plaintiff's fall, employee Eryn Jones brought carts in from the parking lot and placed them in the cart well.

6

Plaintiff indicates that this is illustrated on the videotape produced by Defendant.[2]  Defendant contends that Plaintiff's assertions regarding a known problem with ridges or wrinkles in the rug is Plaintiff's own conjecture, and that Plaintiff has mischaracterized the testimony of Big Lots employees.

The undersigned finds that Plaintiff has presented sufficient circumstantial evidence to raise a jury question as to whether she fell because of a dangerous condition.  This Court is required to view the evidence in the light most favorable to Plaintiff as the non-moving party.  The instant case is more akin to *Weiser*, in that Plaintiff has presented evidence that the rug becoming out of shape after carts were brought in was a common occurrence of which employees were aware.  Unlike *Steward* in which the plaintiff provided contradictory testimony about the appearance of the alleged dangerous condition prior to her fall, the Plaintiff in the instant case testified that she did not look at the rug at all until after she fell.  (Doc. 26-1 at 28-29.)

Defendant contends that Plaintiff has mischaracterized the testimony of Ms. Helton and Ms. Bowman.  Although Ms. Helton may not have used the phrase "known problem" to describe the effect of carts being brought in on the rug as Plaintiff suggests, this is a fair characterization of her testimony.  Ms. Helton stated that straightening the rug after carts were brought in was something employees "tried to keep an eye on."  (Doc. 26-4 at 29.)  Ms. Helton further testified as follows:

> Q. So when anybody would bring in carts then they'd check the rug?
>
> A. Almost every time.  Sometimes you couldn't put the carts—our cart well was very small and you had to turn a corner—you had to spin them around and sometimes the rug

---

[2]This video tape has not been provided to the Court by either party.

would be in the way to do that and so we would always have to fix it after we brought carts in, most of the time, unless we were only bringing in a couple.

Q. So would the rug be moved when carts came in or would it just be straightened out after they were put in.

A. They would just be straightened.

Q. Because that was pretty common for the rug to get out of shape when they'd turn those carts, right?

A. Right.

*Id.* at 30. Ms. Helton's testimony supports Plaintiff's contention that it was a known problem that the floor mat would become wrinkled and bunched up when carts were brought in.

Plaintiff also argues that, according to Ms. Bowman, ridges in the rug "were not uncommon." (Doc. 26 at 3.) As support, Plaintiff cites Ms. Bowman's statement that "I do know that everybody knows in the store that if there is a wrinkle in a rug that you, you know, flatten it out." (Doc. 26-3 at 11.) Plaintiff is perhaps overstating Ms. Bowman's testimony. The Court finds, however, that Ms. Helton's testimony that the rug commonly became out of shape when carts were brought in, coupled with the undisputed fact that carts had been brought in immediately prior to Plaintiff's fall, creates sufficient circumstantial evidence to support an inference that there was a wrinkle or ridge in the rug prior to Plaintiff's fall.

Because a reasonable jury could find that Defendant's premises were in a dangerous condition prior to Plaintiff's fall based on the evidence Plaintiff has presented, Defendant's Motion for Summary Judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 20) is **denied**.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of April, 2016.